**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Robert H. Boudreau

v.                                              Civil No. 09-cv-247-SM

Dr. Celia Englander, et al.[1]

## O R D E R

Before the Court is Robert Boudreau's complaint (document

no. 1) and a motion to amend the complaint (document no. 7)[2],

alleging that the defendants, all employees of the New Hampshire

Department of Corrections ("DOC"), have violated his rights under

the Eighth Amendment and state law by denying him adequate

---

[1]In addition to Dr. Celia Englander, the Medical Director
for the New Hampshire Department of Corrections ("DOC"), Boudreau
has named the following defendants to this action: DOC physical
therapist Bernadette Campbell, DOC physician Dr. John Eppolito,
DOC Director of Medical and Forensic Services, Dr. Robert
MacLeod, and Corrections Officer Robert Lemioux. Boudreau
originally named a number of other defendants to this action, but
subsequently filed an "Assented-to Motion to Dismiss Selected
Defendants" from this action (document no. 27) which was granted
on August 12, 2009, dismissing those defendants from this suit.

[2]I grant the motion to amend the complaint (document no. 7).
I will also consider the facts alleged in Boudreau's motion for
injunctive relief (document no. 2) as part of the complaint.  The
complaint (document no. 1), the motion (document no. 2), and the
amendment (document no. 7), in the aggregate, will constitute the
complaint in this matter for all purposes.

medical treatment for his serious medical needs, including pain

medication and work assignment accommodations, and retaliated

against him in violation of the Fourteenth Amendment's Due

Process Clause.[3]  As Boudreau is a prisoner, the matter is before

me for preliminary review to determine whether or not the

complaint states any claim upon which relief might be granted.

See 28 U.S.C. § 1915A.  For the reasons stated herein, I find

that Boudreau has alleged sufficient facts to state an Eighth

Amendment claim upon which relief might be granted, and I

therefore direct service of this action on the following

defendants: Dr. Celia Englander, Bernadette Campbell, Dr. John

Eppolito, Dr. Robert MacLeod, and Corrections Officer ("C.O.")

Robert Lemioux.

## Standard of Review

Under this Court's local rules, when an incarcerated

plaintiff commences an action pro se,[4] the Magistrate Judge

conducts a preliminary review of the matter.  See United States

---

[3]Boudreau has filed a motion for a temporary restraining
order and a preliminary injunction (document no. 2).  A hearing
was held on that motion before Magistrate Judge James Muirhead
who will issue a Report and Recommendation thereon.

[4]Boudreau is now represented by counsel in this case.  He
initially, however, filed this action pro se.

2

District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2); 28 U.S.C. § 1915A. In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals). The court must accept as true the plaintiff's factual assertions, see Erickson, 551 U.S. at 94, and any inferences reasonably drawn therefrom. See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005); Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990). This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

Robert Boudreau is a DOC prisoner presently housed at the
Northern New Hampshire Correctional Facility ("NCF"). Boudreau
has been housed, at times relevant to this action, at both NCF
and the New Hampshire State Prison for Men in Concord ("NHSP").
Boudreau has significant back injuries, dating back to at least
1999 and predating his present incarceration, that have caused
him to have chronic back pain.

Boudreau has been serving his present incarceration since
June 2006. Upon his June 2006 arrival at the NHSP, Boudreau
immediately notified CO Burrows that he suffers from severe and
chronic lower back pain, had previously had two back surgeries,
and that he was in need of immediate treatment for his pain.
Burrows contacted NHSP Medical Department personnel who, based on
information from Boudreau's prior DOC incarceration, confirmed
that Boudreau had the back problems described, and immediately
issued Boudreau a "bottom bunk pass" until he could be seen by
the Medical Department.

Within a day or two, Boudreau was seen at the NHSP's Health
Services Center so that he could be evaluated by a physician for
treatment for his pain, and a treatment plan could be developed.

4

Boudreau was also given an appointment to see the DOC physical therapist Bernie Campbell.

During his ensuing appointment with Campbell, Boudreau advised her of his pain, and told her that he believed his pain was being exacerbated by a screw that had been incorrectly placed in his lower back. Boudreau told Campbell he had seen his x-rays from Concord Hospital which showed the presence of a misplaced screw in his lower back. Campbell advised Boudreau that she doubted that he had a misplaced screw, and expressed her opinion that he was drug-seeking. Campbell therefore refused to order x-rays or refer Boudreau to a physician for follow-up.

Boudreau attended numerous sick calls, all to complain of his severe chronic back pain. Finally, DOC medical personnel agreed to have Boudreau's back x-rayed. Boudreau was then given an appointment to see Nurse Practitioner Brett Mooney. Because the x-rays revealed a malpositioned screw in Boudreau's lower back, Mooney prescribed Boudreau a narcotic pain medication, and referred him to Dartmouth-Hitchcock Medical Center neurosurgeon Dr. Ross Jenkins.

Boudreau saw Dr. Jenkins, who confirmed that he had "mal-positioned hardware" in his back that needed to be removed, and

that was probably causing Boudreau pain.  In December 2006,
Boudreau had surgery to remove the screw.  When he was returned
to the prison, Dr. Englander prescribed morphine for Boudreau to
treat his pain.  At Boudreau's post-operative checkup, Dr.
Jenkins agreed that the morphine recommended by Dr. Englander
should be continued.

After surgery, Boudreau alleges that his lower back pain
increased.  Boudreau's providers, Drs. Jenkins and Englander and
DOC Nurse Practitioner Neculai, agreed that Boudreau should
continue to receive narcotic pain medication, and should use a
"T.E.N.S. Unit"[5] to treat episodic instances of acute pain not
assuaged by his prescribed medication.  Boudreau, however, had to
obtain the T.E.N.S. Unit from Campbell, who failed to provide one
to him for more than two years.  Boudreau only received the
T.E.N.S. Unit after Dr. Englander and Neculai prescribed its use
seven times, and Boudreau had filed grievances and complaints
against Campbell alleging that she had failed to provide him with
prescribed medical treatment.  In addition to being recalcitrant

---

[5]A T.E.N.S., or Transcutaneous Electric Nerve Stimulation,
Unit is  a pocket-sized battery-operated device that uses
electric impulses, administered via electrodes placed on the
painful area of the body, to block nerve pain signals to the
brain.

to provide the T.E.N.S. Unit, Campbell repeatedly revoked medical
passes that had been given to Boudreau by his treating
physicians, and cancelled a referral to an outside physician set
up by Dr. Englander to discuss pain relief options. Campbell
told Boudreau that she cancelled the appointment because she
believed she already knew what the doctor would order, and that
sending him to the physician was "just throwing money out the
window," as her own treatment would be more beneficial to
Boudreau than what the doctor would order. Campbell told
Boudreau that if her treatment didn't work, she would select a
doctor for him to see.

Boudreau alleges that he complained to Dr. Robert MacLeod,
the Director of Medical and Forensic Services at the DOC, about
Campbell's actions in overruling the orders, referrals and advice
of his doctors, unreasonably delaying his receipt of the T.E.N.S.
Unit, and generally mistreating him. Dr. MacLeod failed to
correct the situation. Boudreau ultimately filed a complaint
against Campbell with the State physical therapy licensing board.

Boudreau claims that since his filing of complaints against
DOC medical staff, Campbell in particular, Dr. Englander has
become hostile to him. Specifically, after having already found

7

that Boudreau had chronic pain in need of narcotic treatment, and
even after increasing his dosage as necessary to control his
pain, Dr. Englander has, since Boudreau filed the complaint
against Campbell, stated that she doesn't think there is anything
wrong with Boudreau, and that his requests for medication amount
to no more than drug-seeking behavior.

Boudreau alleges that the DOC has recently established a
Pain Management Board, comprised of health care providers,
including DOC physician Dr. John Eppolito.  The Pain Management
Board operates under the assumption that prescribing narcotics is
not necessary to adequately treat pain.  According to the
complaint, Dr. Eppolito, on behalf of the Pain Management Board,
is reviewing the treatment plan of all inmates receiving any pain
treatment.  Boudreau asserts that the goal of the Pain Management
Board is to stop use of narcotics to treat pain, if at all
possible.

In June 2009, Boudreau saw Dr. Eppolito for the first time,
at Dr. Eppolito's initiative.  Dr. Eppolito told Boudreau that
due to budgetary constraints, he was reviewing the files of all
inmates at the DOC receiving narcotics to manage pain.  Dr.
Eppolito did not examine, or attempt to examine, Boudreau.  Dr.

Eppolito advised Boudreau that he did not feel, upon reviewing

his file, that he needed pain medication. Boudreau argued with

Dr. Eppolito, advising him that he needed his medication to

manage his pain. Boudreau also told Dr. Eppolito that he

believed that his own doctors, who had examined and treated him,

and who specialized in the care and treatment of his type of

injury and pain, were more qualified to diagnose and treat him

than was Dr. Eppolito. Boudreau also told Dr. Eppolito that he

would file a civil rights action against him if he removed him

from his medication. At that point, Dr. Eppolito threw Boudreau

out of his office and has since directed that Boudreau be weaned

off of his narcotic pain medications. Boudreau has attempted to

see Dr. Englander since then, but has been advised that all of

his pain issues must be treated by Dr. Eppolito in the future.

As late as July 22, 2009, DOC Nurse Practitioner Judy Baker

told Boudreau that it was obvious to her that he was in a great

deal of pain, and that the fact that he has pain is supported by

his medical history. Baker offered to request that Dr. Englander

reevaluate weaning Boudreau off of his medication. Two days

later, Boudreau was told that Dr. Englander could not override

Dr. Eppolito's order to remove Boudreau from his previously

9

prescribed medication. Baker offered to prescribe Trazadone for Boudreau, but he declined as he is wary of the side effects of psychiatric medication. Baker prescribed Benadryl for Boudreau, so that he could sleep, as his pain was keeping him awake.

The only medications Boudreau will be able to take to alleviate his pain, under Dr. Eppolito's current orders, are acetaminophen (Tylenol) and ibuprofen (Motrin). Boudreau further asserts that Dr. Eppolito is removing him from his narcotics pain medication as part of an overall cost-saving measure which includes removing all DOC inmates from narcotic drugs. Boudreau bases this assertion on Dr. Eppolito's statements during the June 2009 meeting. Boudreau asserts that the DOC defendants' refusal to provide him with adequate pain management is motivated in part by budgetary concerns and in part by a desire to retaliate against him for filing, or stating his intention to file, complaints against medical personnel.

Boudreau further states that CO Robert Lemioux is the officer in charge of warehouse security at NCF, where Boudreau works as a light duty worker. Boudreau claims that Lemioux is aware of his serious injuries, and his need to only do light duty work assignments. On Boudreau's first day working in the

10

warehouse, Lemioux acknowledged Boudreau's medical condition and
stated that his restriction to light duty work would be honored.
Since then, however, Lemioux has, on a number of occasions,
ordered Boudreau to perform tasks that he cannot physically do,
or tasks that violate Boudreau's light duty work restrictions.
Boudreau states that if he tells Lemioux that he is physically
unable to do the work requested, either due to pain or due to the
requirement of physical activity beyond Boudreau's physical
limitations, he is threatened with disciplinary action.
Boudreau alleges that Lemioux continues to require him to violate
his physical restrictions despite the fact that Boudreau has
filed grievances and complaints about Lemioux with his superiors
at the DOC.  Lemioux has been instructed not to tell Boudreau to
perform tasks beyond his physical capabilities, but the problem
persists.

## Discussion[6]

## I.    Section 1983

Section 1983 creates a cause of action against those who,
acting under color of state law, violate federal constitutional

---

[6]The claims as identified herein will be considered to be
the claims raised in the complaint for all purposes.  If
plaintiff disagrees with this identification of the claims, he
must properly file a motion to amend his complaint.

11

or statutory law. <u>See</u> 42 U.S.C. § 1983[7]; <u>Parratt v. Taylor</u>, 451
U.S. 527, 535 (1981) (overruled on other grounds by <u>Daniels v.
Williams</u>, 474 U.S. 327, 330-331 (1986)); <u>Wilson v. Town of
Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002). In order for a defendant
to be held liable under § 1983, his or her conduct must have
caused the alleged constitutional or statutory deprivation. <u>See
Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v.
Flores</u>, 103 F.3d 1056, 1061-62 (1st Cir. 1997). Because
Boudreau's claims allege violations of federal constitutional law
effected by state actors, his suit arises under § 1983.

## II. Inadequate Medical Care Claim

The Eighth Amendment protects prison inmates from prison
officials acting with deliberate indifference to their serious
medical needs. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 831 (1994).
To assert a viable cause of action for inadequate medical care, a

---

[7]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law . . . .

12

prisoner must first state facts sufficient to allege that he has not been provided with adequate care for a serious medical need. Id.; Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Estelle, 429 U.S. at 106. The inmate must then allege that a responsible prison official was aware of the need or the facts from which the need could be inferred, and still failed to provide treatment. Estelle, 429 U.S. at 106. A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated. See Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); Kosilek v. Maloney, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing Farmer, 511 U.S. at 835-47); see also Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990) (defining a serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention") (internal citations omitted).

"[A]dequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are

13

based on medical considerations. United States v. DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987). This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy. See Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006) ("When a plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute with an exercise of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation.") (internal citations omitted).

Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991). Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state. See Wilson v. Seiter, 501 U.S. 294, 302 (1991).

Boudreau alleges that since his 2006 arrival at the NHSP, DOC medical personnel have been aware of his serious health conditions, including his previous back injury, surgeries, and

14

resulting chronic pain, as well as his need for pain medications. Both DOC and outside physicians, for two and a half years, prescribed narcotic medications to treat Boudreau's pain. Despite this, Dr. Eppolito, without so much as examining Boudreau, removed him from his pain medications, providing only weaker over-the-counter alternatives, which failed to adequately treat Boudreau's pain. Boudreau states that Dr. Englander and Dr. MacLeod knew of and refused to remedy the denial of adequate pain medication. Further, Campbell denied Boudreau medical passes, a T.E.N.S. Unit, and consultation with a physician specialist, all measures ordered by Boudreau's treating physicians to help alleviate his pain. Further, Lemioux, who was well aware of Boudreau's back condition, ordered Boudreau to perform injurious tasks that were against his physicians' orders, under the threat of disciplinary action.

I find that Boudreau has stated the minimum facts necessary to state a claim of inadequate medical care against current each of the defendants, and I direct that this action proceed against them.

III. Retaliation Claims

Boudreau alleges that a number of actions were taken against him in retaliation for his grievances and legal actions against DOC medical personnel regarding his medical care at the DOC. The alleged retaliation amounted to the refusal, by the defendants, to provide Boudreau with adequate pain medication and other pain management measures, as well as accommodations for his medical condition at his prison job.

In order to state a claim for retaliation, an inmate must allege: (1) the conduct which led to the alleged retaliation was protected by the First Amendment, (2) some adverse action at the hands of the prison officials, and (3) a causal link between the exercise of the inmate's First Amendment rights and the adverse action. See Price v. Wall, 428 F. Supp. 2d 52, 55 (D.R.I. 2006); see also McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (discussing pleading requirements for retaliation claims by prisoners); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) ("[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."); LaFauci v. N.H. Dep't

16

of Corr., No. Civ. 99-597-PB, 2005 WL 419691, at *7 (D.N.H. Feb.
23, 2004) (Unpublished Order); Oropallo v. Parrish, No. 93-1953,
1994 WL 168519, at *3 (D.N.H. May 5, 1994) (citing Ferranti v.
Moran, 618 F.2d 888, 892 n.4 (1st Cir. 1980) ("[A]ctions
otherwise supportable lose their legitimacy if designed to punish
or deter an exercise of constitutional freedoms.") (internal
citation omitted)).  I consider each of these elements of a
retaliation claim in turn.

A.    Conduct Protected by the First Amendment

The right to petition the government for a redress of
grievances has been characterized as "among the most precious of
the liberties safeguarded by the Bill of Rights." United Mine
Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967).  In
the prison context, this right means that inmates must be
"permit[ted] free and uninhibited access . . . to both
administrative and judicial forums for the purpose of seeking
redress of grievances against state officers." Sostre v.
McGinnis, 442 F.2d 178, 200 (2d Cir. 1971) (en banc); see Hudson
v. Palmer, 468 U.S. 517, 523 (1984).  Accordingly, to the extent
that Boudreau filed grievances or civil or administrative

17

complaints, he was engaged in an exercise of his First Amendment
right to petition the government for a redress of his grievances.

The First Amendment protects an individual's freedom of
speech in both oral and written form.  <u>See</u> U.S. Const. amend. I;
<u>Palmigiano v. Travisono</u>, 317 F. Supp. 776, 786 (D.R.I. 1970).
Expressing an intent to file a grievance or a lawsuit is speech,
and as such, is protected by the First Amendment.  Boudreau was
exercising a legitimate First Amendment right when he expressed
an intention to file grievances, complaints, or lawsuits against
DOC medical personnel.

B.    Adverse Action

As to the second element of a retaliation claim, Boudreau
alleges that adverse action was taken against him when he was
denied pain medication, denied other forms of pain relief,
including a T.E.N.S. Unit and consultation with a specialist,
denied medical passes, and threatened with disciplinary
infractions when he insisted on adhering to the physical
restrictions occasioned by his back injury, and filed, or stated
an intention to file, grievances, complaints, or lawsuits against
DOC medical personnel.  These are, undoubtedly, adverse actions,
whether or not they are justified in certain contexts.

18

Accordingly, Boudreau has sufficiently alleged that the
defendants took adverse actions against him.

C.  Causal Link

Finally, Boudreau must demonstrate that there is a causal
connection between the adverse actions complained of and his
exercise of his First Amendment rights.  I find that, for
purposes of preliminary review, Boudreau has alleged sufficient
facts to enable me to draw the inference that the adverse actions
described were made in response to Boudreau's expressed intention
to file grievances against medical personnel, grievances and
complaints he actually filed against Campbell, and a lawsuit that
he threatened to file, and then filed, against Dr. Eppolito.
Specifically, Boudreau alleges that the adverse actions taken
against him by his doctors represented a dramatic change in his
treatment plan, despite there being no significant change in his
condition.  The only change Boudreau alleges was the filing of
grievances, complaints and lawsuits against defendants which, he
states, resulted in hostile treatment and a reduction in his
access to pain treatment.  As the allegations in the complaint,
if true, satisfy the elements of a retaliation claim, I direct

19

that the retaliation claim be served on the defendants to this action.

IV. State Law Claims

In addition to his federal claims, Boudreau has alleged that the actions of the defendants violated his rights under state law. Where, as here, there is no diversity of the parties, this Court can obtain jurisdiction over plaintiffs' state law claims only by exercising its supplemental or pendant jurisdiction over the state claims where the claim is part of the same case or controversy as a federal claim properly before this Court. See 28 U.S.C. § 1367(a) (allowing court to exercise supplemental jurisdiction over state law claims that are "so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy); see also United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Plaintiff's state law claims arise out of the same facts and circumstances as his asserted federal claims. Accordingly, I find that Boudreau's state claims of medical malpractice, negligence, and intentional infliction of emotional distress against the defendants may proceed under this Court's supplemental jurisdiction. See 28 U.S.C. § 1367(a).

20

## Conclusion

I find that Boudreau has stated claims upon which relief might be granted for inadequate medical care under the Eighth Amendment and retaliation under the Fourteenth Amendment, as well as state law claims, against defendants Dr. Celia Englander, Dr. John Eppolito, Bernadette Campbell, Dr. Robert MacLeod, and CO Robert Lemioux.  I therefore direct that this action proceed against those defendants.

Boudreau's motion to amend his complaint (document no. 7) is GRANTED.

I order the complaint (document nos. 1, 2 & 7) be served on defendants.  The Clerk's office is directed to serve the New Hampshire Office of the Attorney General (AG), as provided in the Agreement On Acceptance Of Service, copies of this order and the complaint (document nos. 1, 2 & 7).  See LR 4.3(d)(2)(C).  Within thirty days from receipt of these materials, the AG will submit to the court an Acceptance of Service notice specifying those defendants who have authorized the AG's office to receive service on their behalf.  When the Acceptance of Service is filed, service will be deemed made on the last day of the thirty-day period.

21

As to those defendants who do not authorize the AG's office to receive service on their behalf or whom the AG declines to represent, the AG shall, within thirty days from receipt of the aforementioned materials, provide a separate list of the last known addresses of such defendants. The Clerk's office is instructed to complete service on these individuals by sending to them, by certified mail, return receipt requested, copies of these same documents.

Defendants are instructed to answer or otherwise plead within twenty days of acceptance of service. See Fed. R. Civ. P. 12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on

the Defendants by delivering or mailing the materials to them or
their attorneys, pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

Justo Arenas
United States Magistrate Judge

Date:      August 24, 2009

cc:      Michael Sheehan, Esq.
         James William Kennedy, Esq.
         Edward M. Kaplan, Esq.

23